IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| STACY DEEMAR, <br><br> Plaintiff, <br><br> v. <br><br> BOARD OF EDUCATION OF THE CITY OF EVANSTON/SKOKIE ("DISTRICT 65"), ANGEL TURNER, LATARSHA GREEN, and STACY BEARDSLEY, <br><br> Defendants. | Case No. 21-cv-3466 <br><br> Judge John J. Tharp, Jr. |

## DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS

### INTRODUCTION

Plaintiff Stacey Deemar, a part-time drama teacher in District 65, asks this Court to enjoin the District from continuing its important training and curriculum objectives that seek to educate students on the pernicious and destructive impact of racism based on her personal disagreement with such messaging. In her Amended Complaint and Response, Deemar fails to identify any actual harm or injury to herself that gives her standing to bring her claims. Instead, the bulk of the Amended Complaint and Response expresses Deemar's personal objections to discussions of concepts such as "white privilege," "intersectionality," and institutional racism.

Putting aside the inflammatory and unsupported conclusions in their brief in Response to Defendants' Motion to Dismiss, Deemar asserts she attended only **one** meeting where staff were broken into groups by race but does not allege this meeting was mandatory or that she suffered any actionable harm from attending this meeting. She further alleges she did not seek to participate in professional development opportunities because she assumed she would be denied the opportunity to do so, but identifies no opportunity she sought to participate in or was denied the

opportunity to participate in because of her race. The cases cited by Deemar in her Response confirm she cannot base her claims on a professional development opportunity she never sought and was never affirmatively denied. Because Deemar lacks standing for her claims, her Amended Complaint should be dismissed with prejudice.

Similarly, Deemar's Amended Complaint fails to state a claim upon which relief may be granted under either the Equal Protection Clause or Title VI. The professional development opportunities at issue were provided to her in her capacity as an employee of the District, not a student, and thus, Deemar cannot avoid the express prohibition on challenging employment related practices under Title VI. Deemar asserts no facts showing the primary purpose of the District's Title II funding is the education of teachers rather than the education of students. Moreover, Deemar has not alleged sufficient facts showing she was subject to an adverse employment action. Finally, Deemar alleges no facts to establish the District can be held liable for the actions of its students. As fully set forth in the Defendants' Memorandum in Support of Their Motion to Dismiss ("Memorandum") and this Reply, Deemar has failed to remedy the errors in her Amended Complaint and it should be dismissed with prejudice.

## ARGUMENT

### I. Deemar Has Not Shown an Injury in Fact Conferring Standing Upon Her

In her Amended Complaint and Response, Deemar identifies two alleged incidents she contends give her standing: (1) she participated in a staff meeting in which teachers were divided into different groups based on race; and (2) she did not seek to participate in professional development sessions, such as the session titled "Racial Affinity Groups: Asian and LatinX Courageous Self Care," because she assumed that she was not allowed to participate because she is White. FAC, Dckt. 68, at ¶¶ 63, 80.

3377794.2

Deemar's assertion she attended a single staff meeting in which teachers were temporarily separated into groups by race does not confer standing because she does not allege any facts supporting a finding this meeting resulted in the sort of concrete, particularized injury necessary to confer standing under the Constitution. FAC, Dckt. 68, at ¶63; *see Carello v. Aurora Policemen Credit Union,* 930 F.3d 830, 834 (7th Cir. 2019) (citing *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016)) ("Concreteness and particularization are distinct components of an injury in fact."). Any possible indefinable and unexplained injury or harm resulting from a single meeting is *de minimis* at best and is insufficient to support standing. *Hessel v. O'Hearn,* 977 F.2d 299, 303 (7th Cir. 1992) ("[I]f a loss is not only small but also indefinite, so that substantial resources would have to be devoted to determining whether there was any loss at all, courts will invoke the *de minimis* doctrine and dismiss the case, even if it is a constitutional case…The maxim's design is to prevent expensive and mischievous litigation, which can result in no real benefit to complainant . . ."). At most, Deemar alleges mere stigmatic harm that this Court previously held is not, in itself, sufficient to show differential treatment." Memorandum Opinion and Order ("Ord."), Dckt. 65, at 9.

Deemar's attempt to compare a single meeting in which teachers were asked to temporarily divide into separate groups by race to the race-segregated public-school systems declared unconstitutional in *Brown v. Board of Education* does not support standing in this case. *Brown v. Bd. of Ed. of Topeka, Shawneee Cnty. Kan.*, 347 U.S. 483, 487 (1954). As specifically noted by the Supreme Court, one of the lower courts which initially found no constitutional violation resulting from one of the segregated school systems at issue in *Brown* specifically found "segregation . . . has a tendency to [retard] the educational and mental development of negro children and to deprive them of some of the benefits they would receive in a racial[ly] integrated school system." *Id.* at 495. The Black children in *Brown* were subject to completely segregated educational system; the

harm to the plaintiff students in *Brown* was not in question. In contrast, Deemar does not allege she was denied any benefit or suffered any loss or harm because of her participation in this one, single, meeting.

Similarly, Deemar's allegations that she did not participate in race or ethnicity-based affinity groups fail to support standing because she admits she did not affirmatively seek to participate in any of these groups, nor was she affirmatively excluded from these groups. Again, her subjective belief that she was not welcome to participate due to the name given to the group is insufficient to confer standing. *See also, Freedom from Religion Found., Inc. v. Lew*, 773 F.3d 815, 815 (7th Cir. 2014) (stating without the personal denial of a benefit, a complaint only has generalized grievances for which there is no standing).

Deemar's new allegations are no different in substance or form than the allegations in *Moore v. Bryant* by a Black attorney who repeatedly was exposed to the Confederate battle emblem, a blatant symbol of violent and virulent racism, in order to appear in court and represent his clients; the Court in *Moore* found that he did not have standing to challenge the government sponsorship of this racist symbol. *Moore v. Bryant*, 853 F.3d 245, 251 (5th Cir. 2017); *see also, Carroll v. Nakatani*, 342 F.3d 934, 946 (9th Cir. 2003) ("Being subjected to racial classification differs materially from having personal been denied equal treatment . . . . [Plaintiff] does not cite, and we do not find, any authority supporting the proposition that racial classification alone amounts to a showing of individualized harm."). Indeed, Deemar's allegation that she participated in a single meeting in which teachers were temporarily grouped by race and her belief that she was not welcome to participate in professional development groups pale in comparison to the experience of the plaintiff in *Moore* and cannot possibly constitute the sort of concrete and

particularized injury necessary to confer standing. Accordingly, her Amended Complaint should be dismissed.

### A. Deemar Concedes She Lacks Standing to Vindicate the Rights of Students

Deemar fails to address the District's arguments with respect to her claims related to her lack of standing to vindicate the rights of students and, therefore, she has waived any such arguments. *See Cnty. of McHenry v. Ins. Co. of the West*, 438 F.3d 813, 817–18 (7th Cir. 2006).

## II. Deemar's Title VI Claims Fail as A Matter of Law

### A. Deemar's Allegations Concern "Employment Practices" that are Excluded from Title VI

Deemar fails to respond to the District's argument that a teacher is not within the "zone of interests" protected by Title VI, an essential element to state a statutory claim. Accordingly, she has waived any such arguments. *See id.* Indeed, the primary purpose of the District's programming is the educational development of students, meaning that students (not teachers) are the intended beneficiaries for purposes of a Title VI claim. *See e.g., Doe ex rel. Doe v. St. Joseph's Hosp. of Fort Wayne*, 788 F.2d 411, 419 (7th Cir. 1986); *Doe v. Woodridge Elem. Sch. Dist. 68 Bd. of Educ.*, 2005 WL 910732, at *2 (N.D. Ill. Apr. 13, 2005).

Deemar ignores her status as a teacher, as well as the actual factual allegations in her Amended Complaint, by asserting Counts II and III do not concern "employment practices" excluded from the scope of Title VI by Section 2000d-3. Pl.'s Resp., Dckt. 78, at 9. As a teacher, Deemar was an employee of the school and by definition, any alleged harassment or discrimination that she contends to have personally suffered is employment discrimination, not discrimination in educational programs.

With respect to Counts II and III of the Amended Complaint, Deemar fails to articulate why the District's employment practices are not at issue. In fact, Deemar's allegations as to the

impact of the District's policies on her personally applies exclusively to the employment relationship between her and the District: through staff meetings and the development of teaching skills to better perform as an employee of the District. *See e.g.*, FAC, Dckt. 68, at ¶¶ 63, 193, 206–11. Accordingly, Deemar's contention that Counts II and III do not concern the District's employment practices is mistaken.

Because Deemar's allegations exclusively concern the impact of the District's practices on her employment relationship she can only state a claim under Title VI if she can establish the *primary objective* of the District's receipt of Title II funds is to provide employment of teachers for all counts in the Amended Complaint. Def.'s Mem. of Law, Dckt. 70 at 11; *see also* Ord., Dckt. 65, at 24. She makes no attempt to do so in her Response, and asserts she is not required to show that "providing employment is a primary objective of the federal aid" because she is an intended beneficiary of the federal funding. *Ahern v. Bd. of Educ. of Chi.*, 133 F.3d 975, 978 (7th Cir. 1998). As noted above, her allegations inherently relate to employment practices, not educational practices, so her failure to identify any federal funding that is for the express purpose of employment is fatal to her Title VI claim. *See id*; *Veljkovic v. Bd. of Educ. of Chi.*, 2020 WL 7626735, at *3 (N.D. Ill. Dec. 22, 2020).

As fully described in the District's Memorandum, the primary purpose of Title II is to benefit the education of *students*, not the provision of employment to or education of teachers. The purpose of funding professional development opportunities for teachers is to enhance the education provided to *students*. The benefit to teachers through professional development is an ancillary to the federal funding's *primary purpose*. Deemar does not—and cannot—establish the *primary objective* of the District's Title II funds is to provide her with employment or professional development opportunities. 20 U.S.C. § 6601; *see also Agbefe v. Bd. of Educ. of City of Chi.*, 2021

WL 1885964, at *3 (N.D. Ill. May 11, 2021). Indeed, Deemar only alleges Title II "provides educational benefits by educating teachers in how to do their jobs better." Pl.'s Resp., Dckt. 78, at 9. Deemar does not argue the primary purpose of the District's Title II federal funding is for the provision of employment, a requisite element of her claim. *Id*. Deemar, therefore, concedes the provision of employment is not the primary purpose of the District's Title II funding, and, in doing so, fails to state a Title VI claim.

### B. Deemar Fails to Allege Intentional Discrimination

Deemar's Title VI discrimination claim fails, as a matter of law, for the additional reason that she fails to allege any adverse action taken against her by the District. *Hill v. Am. Gen. Fin., Inc.,* 218 F.3d 639, 645 (7th Cir. 2000) ("An adverse action occurs when an employee is fired or demoted, suffers a decrease in benefits or pay, or is given a significantly lesser job."); *Abrego v. Wilkie*, 907 F.3d 1004, 1012 (7th Cir. 2018). She does not identify any adverse action resulting from the mere participation in a meeting in which teachers were temporarily grouped by race. Her alleged lack of participation in professional development programming and grant funding is not adverse action by the District that can support a claim because she does not allege she sought to participate in the programs but was affirmatively excluded from them by the District itself. FAC, Dckt. 68 at ¶¶ 224, 234. The District could not have taken adverse action against Deemar when it was she who made the decision not to apply. *See Hill v. Potter*, 625 F.3d 998 (7th Cir 2010). Absent allegations of an adverse action, Deemar's claims fail and should be dismissed with prejudice. 42 U.S.C. §2000d-3; *Am. Gen. Fin., Inc.,* 218 F.3d at 645.

### A. Deemar Fails to Allege a Hostile Educational Environment

As previously held by this court Deemar cannot bring a hostile environment under Title VI because she was not denied any *educational* benefit as a result of an alleged hostile environment.

As noted by the Court, "[n]o matter how severe or abusive her environment was, it could not have plausibly denied her access to educational benefits because she does not allege that she was a student of the school." Ord., Dckt. 65, at 24–25. While Deemar may have received some professional development training, by definition the purpose of such training is to enhance the quality of education services provided to students. Absent allegations she was a student, Deemar cannot state a claim for hostile educational environment.

Deemar's complaints of "student harassment" likewise cannot support a hostile environment claim because she fails to allege the District had actual knowledge of such conduct but failed to take remedial action. *See e.g.*, FAC, Dckt. 68, at ¶¶ 218. To hold a defendant liable for an interaction where the defendant did not directly engage in discriminatory conduct, a plaintiff must show the defendant had actual knowledge of the alleged conduct and failed to take corrective action. *Shebley v. United Cont'l Holdings, Inc.*, 357 F. Supp. 3d 684, 693–94 (N.D. Ill. 2019); *Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 273 (3d Cir. 2014); s*ee also Doe v. Galster*, 768 F.3d 611, 617–19 (7th Cir. 2014) (stating Title VI and Title IX are "so similar that a decision interpreting one generally applies to the other" and school officials must have "actual knowledge" and be "deliberately indifferent" to the harassment to prevail under a Title IX claim); *Davis v. Monroe Cnty. Bd. Of Educ.* 526 U.S. 629, 642 (1999). "Constructive knowledge is not sufficient; 'only actual knowledge is a predicate to liability.'" *Blunt,* 767 F.3d at 273.

Deemar alleges no facts supporting a finding the District was aware of any harassment by students. Deemar states she once complained about the District's policies during a staff meeting but makes no assertions she complained of harassment by students or other individuals at the District. FAC, Dckt. 68, at ¶193. She also makes no showing she alerted the District to her perceived harassment due to a lack of professional development opportunities or she reported the

actions of students who were upset by her flawed opinions. FAC, Dckt. 68, at ¶¶ 218–226. Deemar has not even alleged enough to show the District had actual knowledge she felt harassed by students, let alone that the District was indifferent towards those actions. *See Blunt*, 767 F.3d at 273; *Monteiro v. Tempe Union High Sch. Dist.*, 158 F.3d 1022, 1033 (9th Cir. 1998) (finding notice where plaintiff complained about the alleged harassing actions). Deemar's conclusory allegations the District had knowledge of harassment against her and failed to respond, without any supporting facts, are insufficient to state a claim. *See Bell Atl. Corp v. Twombly,* 550 U.S. 544, 555 (2007).

Deemar's out of context mischaracterization of the content of the District's curriculum in the bullet points list at page 12 and 13 in her Response also does not support an assertion the District had actual knowledge she personally was subjected to a race based hostile environment. Concepts of institutional racism and the ongoing impact of racism on society, although perhaps controversial in some circles, are common and appropriate topics of discussion, analysis and debate within schools, and mere exposure to ideas with which Deemar disagrees is not in itself, sufficient to create a legally actionable hostile work environment. Ord., Dckt. 65, at 11, 14–15. Also, that Deemar may have expressed her disagreement with some of these principles at a staff meeting is not sufficient to permit a finding that the curriculum at issue was so inherently offense to Deemar that it created an actionable hostile environment. *Id.* at 24. As previously noted, the potential harm resulting from allowing anti-discrimination law to be used as a means to silence legitimate discussions regarding the impact of race and racism on education outweighs any legitimate goal that Deemar could achieve through this litigation.

Accordingly, her hostile educational environment fails and should be dismissed with prejudice.

## CONCLUSION

Deemar's Amended Complaint fails to remedy the insufficiencies of her original Complaint. For the foregoing reasons, the Amended Complaint should be dismissed with prejudice.

Respectfully submitted,

**BOARD OF EDUCATION OF EVANSTON-SKOKIE COMMUNITY CONSOLIDATED SCHOOL DISTRICT 65, DEVON HORTON, LATARSHA GREEN, and STACY BEARDSLEY**

By: /s/ Nicki B. Bazer
      One of Their Attorneys

Nicki B. Bazer (nbb@franczek.com)
(ARDC: 6277099)
Michael A. Warner, Jr. (maw@franczek.com)
(ARDC: 6208011)
Emily M. Tulloch (et@franczek.com)
(ARDC: 6330568)
Reva G. Ghadge (rgg@franczek.com)
(ARDC: 6335927)
Franczek P.C.
300 S. Wacker Drive, Suite 3400
Chicago, Illinois 60606
(312) 986-0300

Dated: December 9, 2024

**CERTIFICATE OF SERVICE**

The undersigned attorney hereby certifies that she caused a true and correct copy of the foregoing **DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS** to be filed electronically with the Clerk of the Court using the CM/ECF filing system which will send notifications of such filing to all attorneys of record on this 9th day of December, 2024:

> Celia H. O'Leary (coleary@southeasternlegal.org)
> Kimberly S. Hermann (khermann@southeasternlegal.org)
> Branden H. Boucek (bboucek@southeasternlegal.org)
> Southeastern Legal Foundation
> 560 W. Crossville Rd., Suite 104
> Roswell, GA 30075
>
> Whitman H. Brisky(wbrisky@mauckbaker.com)
> Terry S. Lu (tlu@mauckbaker.com)
> Mauck & Baker, LLC
> 1 N. LaSalle St., Suite 600
> Chicago, IL 60602

/s/ Nicki B. Bazer
nbb@franczek.com

3377794.2